**STATE ex rel. MOORE v. O'BANNON, Judge.**

No. 27811. March 1, 1938.

Geo. S. Ramsey, Villard Martin, Garrett Logan, and Tom Finney, for plaintiff.

Joe Brown and M. S. Robertson, U. S. Probate Attys., for defendant.

GIBSON, J. This is an original action commenced by the state on relation of E. H. Moore for writ of mandamus directing S. L. O'Bannon, as district judge of Okmulgee county, to approve service by publication had in an action to quiet title filed in that court.

The petition in district court named as defendants "the heirs, executors, administrators, devisees, trustees and assigns, immediate and remote," of Amster Sugar, deceased. The action was instituted pursuant to chapter 261, S. L. 1919 (secs. 1386-1390, O. S. 1931), providing for such actions against unknown claimants as above designated, and for service upon them by publication where three or more years have elapsed since the death of the owner of the land and no decree of the proper county court determining his heirs has been entered. The petitioner here, plaintiff in the lower court, in attempting service by publication, proceeded in strict conformity with the provisions of said chapter 261. Sections 4 and 5 thereof, now sections 1389, 1390, O. S. 1931, provide the means by which service may be obtained. Section 4 contains the provision for publication and section 5 provides for completion of service upon filing the publisher's proof of publication. Section 4 reads as follows:

"When such petition is filed, the party may without more, proceed to make service by publication upon such defendants, in the manner following: The publication notice must, in such case, be addressed in terms, to 'The heirs, executors, administrators, devisees, trustees and assigns, immediate and remote of _____ deceased' (naming such deceased person). It shall be issued over the official signature of the clerk of the court; shall state the court in which the petition is filed, the name of the plaintiff, the above description of such defendants, and must notify the defendants thus described that they have been sued and must answer the petition filed by the plaintiff, on or before a time to be stated (which shall not be less than forty-one days from the date of the first publication), or the petition will be taken as true, and judgment, the nature of which shall be stated, will be rendered accordingly. The publication must be made three consecutive weeks in some newspaper authorized by law to publish notices in legal proceedings, printed in the county where the petition is filed, if there be any printed in such county, and if there be not, then in some newspaper printed in this state of general circulation in that county. A copy of the publication notice, with a copy of the petition (without exhibits), shall, within sixty days after the first publication of the notice is made, be enclosed in an envelope and addressed to each of such devisees, grantees, or heirs at law, as are named in the petition, or his place of residence, postage prepaid, and deposited in the nearest post office, unless such place of residence is unknown to the plaintiff."

Although the plaintiff below followed the statute to the letter, the respondent refused to approve the service by publication and proceed with the trial of the cause. There is no claim that proof of service as required by section 1390 was not made, nor is there any claim or appearance of untruth in the affidavits filed pursuant to the requirements of said section of the statute. We assume that such affidavits are true.

Respondent contends that service by publication was incomplete and void by reason

of plaintiff's failure to file the prepublication affidavit and attach same to his petition, as required by sections 184 and 190, O. S. 1931.

Petitioner says that the action in district court is clearly of that class of cases authorized by said chapter 261, supra; that said chapter is a special statute and sections 184 and 190 are general in their application. Under such conditions, he contends the special statute controls over the general statute as to procedure. Gardner v. School District, 34 Okla. 716, 126 P. 1018; Muskogee Times-Democrat v. Board of Commissioners, 76 Okla. 188, 184 P. 591; Oklahoma Natural Gas Co. v: McFarland, 143 Okla. 252, 288 P. 468.

Chapter 261 was enacted for the primary purpose of dealing with a particular subject: quieting title to lands belonging to decedents whose heirs had not been determined by the county court within three years subsequent to death, or where grants named heirs or legal representatives, unknown. Under such circumstances the special statute providing for rules of procedure supersedes a general statute which may not refer to the particular subject although broad enough in its terms to include it. The rule applied in the cases last above cited is as follows:

"Where there are two provisions of the statutes, one of which is special and particular and clearly includes the matter in controversy, and where the special statute covering the subject prescribes different rules and procedure from those in the general statute, it will be held that the special statute applies to the subject matter, and that the general statute does not apply."

The action in district court seeks to quiet title to the allotment of a full-blood Creek Indian whose heirs had not been determined by a county court within three years subsequent to the death of said allottee. By reason of this fact, no doubt, the parties in their brief discuss the provisions of the Act of Congress of June 14, 1918, section 375, title 25, U. S. C. A., giving county courts jurisdiction to determine the heirs in such cases. Chapter 261, however, does not purport to have been enacted pursuant to or in furtherance of the provisions of the aforesaid act of Congress. Said section 375 does not attempt to confer upon district courts the authority to determine heirs of a deceased restricted Indian, Chapter 261 affords a means of procedure in specific cases for the foreclosing of claims of unknown parties to lands of deceased persons. The method of obtaining service upon such parties is fully set out in the chapter, and is

intended to apply to all such unknown parties, whether they be restricted Indians or other citizens. The only question for our determination is whether the affidavit mentioned in sections 184 and 190 is necessary to a valid service. That question we decide in the negative. Whether the district court may obtain jurisdiction of Indian heirs of a deceased full-blood Indian, member of the Five Civilized Tribes, in an action to quiet title, is not here decided. The district court did not refuse to approve the service and proceed with the trial on that ground, and therefore the question is not properly presented to us in this proceeding.

The writ is granted, and the respondent is ordered to approve the service as made and to proceed with the trial of the cause.

OSBORN, C. J., BAYLESS, V. C. J., and RILEY, CORN, HURST, and DAVISON, JJ., concur. WELCH, J., absent. PHELPS, J., dissents.

PHELPS, J. (dissenting). I find no objection to the rules of law announced in the syllabus of the majority opinion, but, as I view it, the rules of law therein stated are not applicable to the facts in the instant case. Under the facts before us, I cannot concur in the conclusion arrived at in the majority opinion. The question is whether the plaintiff complied with the law in making service by publication upon the "unknown heirs" of Amster Sugar, deceased, a full-blood Creek Indian.

It is admitted that plaintiff prosecuted his action to determine heirship and to quiet title to land under sections 1386-1390, O. S. 1931, 84 Okla. St. Ann. §§ 257-261, and named as defendants "the heirs, executors, administrators, devisees, trustees and assigns, immediate and remote," of the deceased.

In the body of the petition and in the body of the publication notice, plaintiff included as additional defendants the "unknown heirs" of the deceased. The term "unknown heirs" means all kinds of heirs. 21 R. C. L. 1290. "Unknown heirs" may be made one of several defendants, and, when so designated, service must be complete as to each, and each defendant must be served in the manner prescribed by law. 50 C. J. 485; 20 R. C. L. 664.

In order for the court to acquire jurisdiction so that it may render a judgment that will be binding upon unknown persons, joined as defendants, the provisions of the statute must be strictly followed, since it is only by virtue of the statute that any

judgment can be entered at all. Unknown Heirs of Whitney v. Kimball, 4 Ind. 546, 58 Am. Dec. 638, and note, 87 Am. St. Rep. 364. Section 183, O. S. 1931, 12 Okla. St. Ann. § 170, provides the manner of obtaining service by publication upon nonresident defendants and unknown heirs made parties defendant in an action which relates to, or the subject matter of which is, real estate. Section 184, O. S. 1931, 12 Okla. St. Ann. § 171, provides that:

"Before service can be made by publication, an affidavit must be filed stating that the plaintiff, with due diligence, is unable to make service of the summons within the state upon the defendant to be served by publication, and showing that the case is one of those mentioned in the preceding section."

In the present case this statute was not complied with. Plaintiff contends, and the majority opinion holds, that this was unnecessary under the provisions of sections 1386-1390, supra. The error in this contention lies in the fact that nowhere are unknown heirs mentioned as parties defendant in the sections relied upon. Surely this law designated as a special act in the majority opinion does not supersede a general law providing the method of serving process upon a class of defendants not mentioned in the so-called special act. Where one of several defendants has not been served, and has neither voluntarily appeared nor authorized an attorney to appear for him, a judgment rendered against him is void and a nullity. Hatfield v. Lewis, 110 Okla. 98, 236 P. 611.

As I view it, the majority opinion is wrong in any case under the facts presented here. To me the rule announced in the majority opinion is particularly objectionable and dangerous when dealing with lands of a full-blood member of the Five Civilized Tribes of Indians. In Naharkey v. Sand Springs Home, 177 Okla. 371, 59 P.2d 289, 292, we recognize the force of a governmental policy as applied to collateral attack. Therein we said:

"Perhaps the true basis for considering extrinsic facts, not appearing on the face of the judgment roll in determining the validity of final judgments affecting the lands of Indians not alienable by reason of restrictions, is that such restrictions are imposed by the federal laws defining the public policy of the nation with respect to and for the protection of a class of individuals regarded as wards of the government, and because a recognition of the validity of such judgments would make the courts an instrumentality through which

the end intended to be accomplished would be defeated."

The Act of Congress June 14, 1918, 40 Stat. 606, § 1, 25 U. S. C. A. § 375, providing for the determination of heirship of allottees of the Five Civilized Tribes, authorizes service by publication, "the service to be in accordance with the method of serving nonresident defendants in civil suits in the district courts of said state." In Homer v. Lester, 95 Okla. 284, 219 P. 392, we held that the Act of Congress June 14, 1918, made no provision for service of any process by publication or otherwise on any one other than "unknown heirs."

In re Jessie's Heirs, D. C., 259 F. 694, 706, in an opinion subsequent to the enactment of sections 1386-1390, supra, Judge R. L. Williams, Federal Judge for the Eastern District of Oklahoma, held that sections 183, 184, O. S. 1931, 12 Okla. St. Ann. §§ 170, 171, supra, prescribed the manner of service in case of "unknown heirs" of allotted Indian lands under the Act of Congress June 14, 1918, in the proceedings in the district or superior courts, saying:

"See chapter 145, Session Laws of Oklahoma, 1919, for manner of service prescribed in case of 'unknown heirs.'"

Service by publication is permissible only where the statute authorizes it and a strict compliance with the requisites of the statute is demanded. 21 R. C. L. 1283. In Griffin v. Galbraith, 114 Okla. 208, 247 P. 339, 342 we said: "To hold that a defendant could be deprived of his property without service, without his day in court, would be depriving him of property without due process of law," is violative of section 7, art. 2, of the Constitution.

I can conceive of no legitimate reason for not complying with what I consider a plain provision of the law in cases of the nature involved in the present action. I can see where rank injustice may result from the noncompliance with the law. The right to protect one's property is second only to the protection of one's person, and the rule announced in the majority opinion makes it possible to divest one of his title without his knowledge by reading something into the law never intended either by the Legislature or Congress.

The statutes herein discussed were both adopted at the same session of the Legislature. One specifically mentions "unknown heirs" as parties defendant and provides the manner of service of process; the other, designated in the majority opinion as a special act, makes no mention of unknown

heirs or unknown persons as parties defendant and makes no provision for service of process upon such defendants.

These acts should be construed together. O'Brien Packing Co. v. Martin, 172 Okla. 157, 44 P.2d 72; State ex rel. Power et al. v. Wenner, 121 Okla. 190, 249 P. 408; Ford et al. v. Walter et al., 163 Okla. 31, 20 P.2d 884.

Being mindful of the seriousness of the question presented and the far-reaching effect of the majority opinion and for the reasons expressed herein, I conclude that the writ should be denied. Accordingly, I dissent.